**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maryann Jane Gray, | No. CV-22-00530-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint seeking judicial review of that denial (Doc. 1), and this Court now addresses Plaintiff's Opening Brief (Doc. 16, Pl. Br.), Defendant's Answering Brief (Doc. 17, Def. Br.), and Plaintiff's Reply (Doc. 18, Reply). Having reviewed the briefs and Administrative Record (Doc. 15, AR.), the Court now reverses the Administrative Law Judge's ("ALJ") unfavorable decision and remands for further proceedings consistent with this opinion.

**I.    THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R.

§ 404.1520(a)(4)(i). If the claimant is engaged in substantial, gainful work, she is not disabled. *Id*. If she is not, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment or combination meets or equals a listing, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where she determines whether the claimant is still capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, she is disabled. *Id.*

This Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). To determine whether substantial evidence supports a conclusion, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**II.  PROCEDURAL HISTORY**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") in June and July 2019 alleging disability beginning in January 2014. (AR. at 17.) Plaintiff alleged disability resulting from asthma, hypertension, and rheumatoid arthritis. (AR. at 204.) Notably, she also underwent bilateral knee replacements in March 2018. (AR. at 559.) In December 2019, a disability examiner determined Plaintiff was disabled effective June 5, 2019, and awarded Plaintiff's SSI claim. (AR. at 69.) The examiner adopted the conclusions of a medical consultant who opined Plaintiff was limited to sedentary work, and thus, was unable to perform her past relevant work. (AR. at 66-68.) The examiner concluded Plaintiff had no transferable skills to other work and applied Medical-Vocational Rule 201.06 to conclude Plaintiff was disabled. (AR. at 68-69.) Regarding Plaintiff's DIB claim, this same examiner asserted there was insufficient evidence to conclude Plaintiff was disabled before December 31, 2018, her date last insured ("DLI").[1] (AR. at 79.) This finding was upheld on reconsideration of Plaintiff's claim (AR. at 91-92), and Plaintiff timely requested a hearing with an ALJ (AR. at 110-11).

On January 25, 2021, ALJ Leslie Perry-Dowdell conducted a telephonic hearing during which the claimant and a vocational expert testified. (AR. at 32-58.) The purpose of the hearing was to determine Plaintiff's eligibility for DIB. (AR. at 36.) On March 1, 2021, the ALJ issued an unfavorable decision determining Plaintiff had no severe impairments prior to her December 31, 2018 DLI. (AR. at 17-29.) The Appeals Council declined review in a letter dated February 11, 2022 (AR. at 1-3), and Plaintiff filed the complaint initiating this civil action in April 2022. (Doc. 1.)

**III.   DISCUSSION**

Plaintiff raises a single issue on appeal: whether the ALJ's conclusion that Plaintiff had no severe impairments before her DLI is "contrary to law and not supported by substantial evidence." (Pl. Br. at 1.) To be found disabled, a claimant must have a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). A severe impairment "significantly limits [the claimant's] physical or mental ability to do basic work

---

[1] To qualify for DIB, Plaintiff must prove she became disabled on or before her DLI. *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017).

- 3 -

activities . . . ." *Id*. § 404.1520(c). Basic work activities include standing, walking, lifting, carrying, pushing, pulling, understanding and carrying out simple instructions, responding appropriately to others in a work environment, and using judgment. Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (S.S.A. 1985). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." *Id*. at *3. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). "[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on [the claimant's] ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28)). Consequently, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Id*. (quoting SSR 85-28). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Id*. (citations omitted); *Young v. Colvin*, No. CV-16-02264-PHX-DGC, 2017 WL 677167, at *4 (D. Ariz. Feb. 21, 2017) ("The Court[ ]concludes that the holding of *Webb*[] . . . requires the Court to reverse if objective evidence suggests that Plaintiff's impairments are more than de minimis.") Here, this must also be established on or before Plaintiff's December 31, 2018 DLI. *Wellington*, 878 F.3d at 872.

In the decision, the ALJ found that, despite bilateral knee replacements in March 2018, Plaintiff's knee impairments were not severe because her condition improved within twelve months. (AR. at 21-22.)[2] The ALJ cited treatment notes from June 2018, where

---

[2] The Plaintiff's impairments must last, or be expected to last, for at least 12 consecutive months. 20 C.F.R. § 404.1509.

- 4 -

Plaintiff reported walking two miles per day while using a cane, and from October 2018, where Plaintiff reported feeling better, ambulating without a cane, and performing her normal daily activities. (AR. at 22.) The ALJ found Plaintiff's other conditions also minimally affected her functioning. (AR. at 22-23.) Regarding Plaintiff's asthma, for instance, the ALJ cited normal respiratory exams from mid-2018, Plaintiff's own reports of no shortness of breath from that period, and her denial of symptoms despite chest x-rays showing fibrosis and bronchitis, among other findings. (AR. at 22.) The ALJ also noted Plaintiff's testimony that she continued to ride her bike every other day. (AR. at 23.)

Despite Plaintiff's improvements and occasional denial of symptoms, substantial evidence does *not* support the conclusion that non-severity is clearly established before Plaintiff's DLI. *Webb*, 433 F.3d at 687. When Plaintiff presented for diagnostic imaging of her knees in November 2017, x-rays revealed "[m]oderate degenerative osteoarthritic changes bilaterally." (AR. at 452.) When she presented to her orthopedist a few months later, she complained of "deep" and "constant" pain in her left knee with gradual onset over the course of one year. (AR. at 389.) After reviewing her x-rays, Plaintiff's provider noted bilateral osteoarthritis with "obliteration of the mediocre ordinance in large osteophytes." (AR. at 390.) Her testimony at the hearing suggested her knees were a chronic issue well before her March 2018 knee replacement surgeries. (AR. at 38.) Plaintiff argues persuasively that degeneration occurs over time. (Pl. Br. at 12.) Defendant is correct that subjective statements regarding symptoms cannot alone establish disability (Def. Br. at 10), but here, there is diagnostic imaging, clinical evidence, and a course of treatment corroborating Plaintiff's issues over a period of at least 12 consecutive months.

Regarding her pulmonary condition, diagnostic imaging from late 2018 and early 2019 showed progressing pulmonary issues with some findings consistent with pneumonia, chronic fibrosis, and bronchitis. (AR. at 546, 548, 575, 578.) Spirometry testing from October 2018 showed Plaintiff had a lung age of greater than 84 years. (AR. at 551.) She reported her asthma was "controlled" in January 2019 (AR. at 546), but in March 2019, Plaintiff reported during a pulmonology visit that she was unable to walk distances greater

than 25 yards without stopping or resting, and that she could not perform the tasks of her bus assistant job without rest breaks. (AR. at 531.)[3] Her provider documented spirometry test results showing "fixed airway restriction due to long term asthma that has not responded to treatment." (AR. at 532.) At her hearing, she testified she uses nebulizer treatments two-to-three times per day (which is consistent with her usage in late 2018 (AR. at 550)), and that perfumes can exacerbate her respiratory symptoms. (AR. at 47.)[4] Later pulmonology reports show Plaintiff's symptoms persisted into 2020. (AR. at 628-29, 634-35, 643.)

Plaintiff argues persuasively that the prior administrative medical findings—upon which the ALJ relied—based their conclusions on a finding of insufficient evidence prior to the DLI. (Pl. Br. at 13, citing AR. at 80-81, 91-92.) The ALJ cited their opinions to support the proposition "that the claimant did not have a severe impairment lasting for at least 12 consecutive months through her date last insured[,]" but the ALJ apparently overlooked the ostensible basis for this conclusion. (AR. at 23.) Importantly, if the effect of an impairment or combination of impairments is unclear, the sequential evaluation should continue beyond step two. *Webb*, 433 F.3d at 687. This did not happen here. The ALJ also had a duty to develop the record if she believed the record was "inadequate to allow for proper evaluation of the evidence[]" for the pre-DLI period. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).[5]

---

[3] Whether this job amounts to substantial, gainful work activity is not at issue here.

[4] The Court rejects Defendant's argument that Plaintiff waived the issue with respect to her asthma. (Def. Br. at 12.) It is clear from Plaintiff's Opening Brief that the issue is whether "Plaintiff had more than minimal physical limitations as a result of her medically determinable *impairments* . . . ." (Pl. Br. at 9, emphasis added.) Plaintiff specifically cited her history of pulmonary treatment to refute the ALJ's conclusion that no severe impairments existed prior to the DLI. (Pl. Br. at 10.)

[5] The Court finds it need not address the assessment of Plaintiff's treating physician, Dr. Theresa Heatley. (AR. at 661-64.) In her Opening, Plaintiff argues the ALJ erred by failing to develop the record with respect to the bases for Dr. Heatley's conclusions. (Pl. Br. at 14.) Defendant argues Plaintiff forfeited the issue. (Def. Br. at 16-17.) The Court finds that, Dr. Heatley's assessment notwithstanding, the ALJ's step two determination is not supported. Moreover, remand will provide additional opportunity to develop the record regarding the bases for Dr. Heatley's opinions.

While there is evidence to support the conclusion Plaintiff's overall condition was improved or stable prior to the DLI, Plaintiff's DIB claim is not "groundless," *Smolen*, 80 F.3d at 1290, as evidenced by the award of her SSI claim effective six months after her DLI. (AR. at 69.) The Commissioner's established disability onset date appears to correspond only to Plaintiff's SSI filing date, and not to any particular medical event. (AR. at 69.) Nowhere in the record does the Commissioner adequately explain why a disabling RFC is appropriate for Plaintiff's SSI filing date, but inappropriate for the period she was insured. SSR 18-01p, 2018 WL 4945639, at *5 (S.S.A. Oct. 2, 2018). ("The date that the claimant first met the statutory definition of disability must be supported by the medical and other evidence and be consistent with the nature of the impairment(s).") (footnote omitted). Plaintiff notes in her Reply, "Between December 31, 2018 [, her DLI,] and June 2019 [, her established onset date,] no yet undiscovered medical condition emerged or traumatic event such as a heart attack occurred, and no big rock fell out of the sky and landed on Plaintiff's head." (Reply at 2.) Yet, between these two dates, without any corresponding medical event or explanation from the Commissioner, Plaintiff went from having no severe impairments to an RFC limiting her to sedentary work. (AR. at 66-69, 79-81.)

This problem is evident from the prior administrative medical findings upon which the SSI award was based. The initial consulting physician's RFC, which led to the conclusion Plaintiff was disabled under the Medical-Vocational rules, was based upon "[k]nee pain [status post] knee replacements doing good, [left] hip pain, obesity, [and] asthma[.]" (AR. at 66.) The environmental limitations were based upon Plaintiff's "[history] of asthma." (AR. at 67.) That same consultant provided no rationale for concluding the same evidence supporting a sedentary RFC was insufficient to determine the RFC for the period six months earlier. (AR. at 80.) The consultant summarily adopted the preliminary opinion of the disability examiner, who concluded without explanation that there was insufficient evidence to determine Plaintiff's DIB claim. (AR. at 79.) The ALJ's

step two determination—which relies substantially upon these unexplained conclusions—is thus not supported by substantial evidence.

**IT IS THEREFORE ORDERED** reversing the March 1, 2021 decision of the Administrative Law Judge (AR. at 17-29), and remanding for further proceedings consistent with this opinion.[6] At the remand hearing, the ALJ should evaluate Plaintiff's DIB claim beyond step two.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and to close this case.

Dated this 2nd day of May, 2023.

Douglas L. Rayes
United States District Judge

---

[6] Plaintiff does not argue that a remand for payment of benefits is appropriate here. (Pl. Br. at 15-16.)